STATE OF NORTH CAROLINA v. JAMES LAMAR FOX

No. 139A81

(Filed 3 March 1982)

1. **Criminal Law §§ 76.10, 158— failure to suppress confession—testimony not in record—presumptions**

    Where defendant failed to include in the record on appeal the substance of the testimony presented to and heard by the trial judge at a suppression hearing, the Supreme Court must presume that the trial court's factual findings concerning defendant's confession were supported by competent evidence. The state of the record precluded the Court from determining whether the trial court's findings were erroneous on the basis that no evidence was adduced at

the hearing which tended to show that defendant knowingly and intelligently waived his constitutional rights.

### 2. Criminal Law § 76.5— confession—sufficiency of findings

A finding that defendant understood his rights when he waived them was sufficient to support a legal conclusion that defendant knowingly and intelligently executed those waivers, and an express factual finding as to the extent and level of defendant's education or intelligence was not required.

ON appeal by defendant as a matter of right from the judgments of *Martin, Judge*, entered at the 26 May 1981 Criminal Session, CHATHAM Superior Court. Defendant was charged in indictments, proper in form, with the first-degree murder and kidnapping of Jean Bateman Gaines and the commission of an armed robbery connected therewith on 10 March 1981. The jury found defendant guilty as charged on each count. Upon the jury's recommendation, the trial court imposed a sentence of life imprisonment for the murder conviction. The trial court sentenced defendant to a term of life imprisonment for the kidnapping to commence at the expiration of the previous sentence for the murder and imposed a prison term of thirty years for the armed robbery to commence at the expiration of the kidnapping sentence. Defendant's motion to bypass the Court of Appeals on the robbery conviction was allowed on 15 October 1981.

Briefly, and viewing it in its most favorable light with the benefit of all reasonable inferences, the State's evidence tended to show that Jean Gaines, a cashier clerk, was working the 3:00 to 11:00 p.m. shift at the Stop and Save Mini-Mart in Goldston, North Carolina on 10 March 1981. Between 7:30 and 8:00 p.m. that evening, a young black male was sitting in a blue Chevrolet parked near the store. A person driving by the store recognized the occupant of the parked vehicle as James Lamar Fox, the defendant. While Mrs. Gaines was alone in the store, defendant went inside with an opened knife and forced her to give him $455.00 from the cash register. Defendant then made her leave the premises with him in his blue Chevrolet. He took her to a spot five miles outside Goldston on a dirt road, stabbed her with a knife, and fled from the scene. Mrs. Gaines died as a result of internal bleeding from the stab wounds.

Later that same evening, police officers went to the Fox residence, where defendant lived with his parents, to speak to de-

fendant about the armed robbery and kidnapping at the Stop and Save Mini-Mart. Defendant came outside to see the officers. He was advised of his *Miranda* rights, affirmed that he understood what those rights meant and signed a waiver form. Defendant then admitted that he had been to the store earlier, but he denied any knowledge of an armed robbery or kidnapping there. The officers then obtained permission from defendant and his parents to search their blue Chevrolet automobile and home. A spot of wet blood was discovered on one of the car doors. Defendant was immediately arrested and placed in a police vehicle to await completion of the searches. The officers found a bloody knife and a large sum of money under the mattress in defendant's bedroom. They also found a bloody washcloth in the bathroom. Defendant was again advised of his constitutional rights, and he once more denied complicity in the robbery, kidnapping and murder. A few minutes later, however, defendant confessed to the crimes as he still sat in a police vehicle parked at his residence. Defendant waived his *Miranda* rights again the very next day when he made similar incriminating statements to an agent of the State Bureau of Investigation.

The defendant offered no evidence during the guilt determination phase of the trial proceedings.

Other relevant facts shall be summarized in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Joan H. Byers for the State.*

*Robert L. Gunn for the defendant-appellant.*

COPELAND, Justice.

Defendant brings forward five assignments of error for our review which concern the admission of his inculpatory statements, the propriety of the District Attorney's argument to the jury, and the correctness of the trial court's recapitulation of the evidence in its instructions to the jury. After a thorough and careful consideration of defendant's contentions, we conclude that he received a fair trial free from prejudical error.

[1] Defendant first argues that evidence of his pre-trial confessions to the charged crimes should have been suppressed. We disagree. Upon defendant's pre-trial motion to suppress his in-

culpatory statements, the trial court found *inter alia* that defendant was fully advised of his constitutional rights three times, that he acknowledged his understanding of those rights on each occasion, that he voluntarily elected to forego his privileges and signed the required waiver forms, and that he seemed coherent and sober during his interrogation and conversation with the various police officers. Defendant did not except to any of the trial court's findings of fact in its order denying the motion to suppress. Nevertheless, he now maintains that the trial court's findings were erroneous because no evidence was adduced at the hearing which tended to show that defendant knowingly and intelligently waived his constitutional rights. The state of the record on appeal precludes our consideration of this contention. Defendant has failed to include in the record the substance of the testimony presented to and heard by the trial judge at the suppression hearing. All we have before us is the judge's final order upon the matter. It is plain that we cannot engage in speculation and assume error in the suppression ruling when no aberration can be fairly and affirmatively ascertained from the record.

> [I]t is well recognized that a silent record supports the presumption that the proceedings in the court below were regular and free from error. *State v. Mullis*, 233 N.C. 542, 64 S.E. 2d 656. Further, it was the duty of the defendant to see that the record was properly made up and transmitted, and when the matter complained of does not appear of record, defendant has failed to show prejudicial error. *State v. Childs*, 269 N.C. 307, 152 S.E. 2d 453. . . .

*State v. Cutshall*, 278 N.C. 334, 346, 180 S.E. 2d 745, 752 (1971) (citation omitted). Presuming then, as we must in this case, that the trial court's factual findings, *supra*, were supported by competent evidence, we are also compelled to conclude that those findings adequately supported the corresponding legal determinations that defendant "freely, *knowingly, intelligently* and voluntarily waived [his constitutional] rights and thereupon made the statements to the officer" on the occasions in which he admitted his guilt.[1] (Emphases added.)

---

1. We also note that the State's evidence in chief at trial clearly demonstrated the fact that defendant forewent his constitutional protections with a sufficient understanding of the significance of his relinquishments. Indeed, the uncontradicted

[2] In addition, we are not persuaded that the foregoing legal conclusion was deficient in any respect due to the absence of an *express* factual finding as to the extent and level of defendant's education or intelligence. The trial court found that defendant affirmed his *understanding* of his rights prior to each waiver. The ability to understand ordinarily implies the possession of the minimal amount of intelligence required for making independent, rational decisions. Nothing in this record indicates that defendant was an exception to this rule or that an issue to this effect was ever raised at the hearing. In fact, defendant presented no evidence whatsoever at the hearing. In these circumstances, we decline to hold that a finding that defendant understood his rights when he waived them was insufficient to support a legal conclusion that defendant knowingly and intelligently executed those waivers.

Defendant next maintains that the district attorney improperly argued his personal beliefs to the jury by insinuating that the people of the county expected a conviction. We find that the statements of the district attorney to which defendant excepted were not reasonably susceptible to such an interpretation. The district attorney was merely thanking the jury for its attentiveness during the trial and expressing additional gratitude to the State's witnesses and the law enforcement officials who assisted in the preparation and presentation of the case. We perceive no transgression in this and hold that such expressions were well within the permissible bounds of jury argument. *See State v. Lynch*, 300 N.C. 534, 268 S.E. 2d 161 (1980); *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980).

Defendant finally argues that the trial court incorrectly summarized certain evidence in its instructions. Defendant has, however, waived his right to complain of the alleged "misstatement" on appeal because he did not make a timely objection thereto at trial and thereby provide the court with an opportunity to correct itself, if necessary, before the jury retired. *State v. Jones*, 303 N.C. 500, 279 S.E. 2d 835 (1981); *State v. Monk*, 291 N.C. 37, 229 S.E. 2d 163 (1976). Notwithstanding this, there is

evidence strongly suggests that defendant confessed in enlightened surrender to the overwhelming reality of being caught red-handed with the instrumentalities and fruits of the crimes so quickly after their commission.

simply nothing to complain about here. The trial judge said in his summary that the evidence for the State tended to show that defendant "told the lady to go with him because he didn't want her to tell on him." This recapitulation of the evidence was fully supported by the testimony concerning defendant's admissions that, after he robbed the store, he told the clerk "you have got to go with me" and that he later "stabbed the victim to keep her quiet and to keep her from identifying him." Record at 89, 91. The assignment of error lacks merit and is overruled.

In sum, our review of the record and defendant's assignments on appeal discloses no error or prejudice requiring a new trial of this matter. Consequently, defendant's convictions are affirmed.

No error.