STATE OF NORTH CAROLINA v. MICHAEL RAY TRULL

No. COA01-1428

(Filed 5 November 2002)

**1. Criminal Law— request for separate arraignment—request to reschedule trial—waiver**

The trial court did not err in an attempted first-degree murder, possession of a handgun by a felon, and discharging a firearm into occupied property case by denying defendant's request for a separate arraignment and to reschedule his trial at least one week thereafter, because: (1) defendant waived the requirement of N.C.G.S. § 15A-943(b) by failing to request formal arraignment; and (2) although defendant contends he never received notice of the twenty-one day limit for filing a request for arraignment as required under N.C.G.S. § 15A-941(d), N.C. R. App. P. 10(b)(1) provides that his failure to raise the issue at trial precludes his raising it on appeal, and in any event the argument is based on the content of documents which are not included in the record on appeal.

**2. Confessions and Incriminating Statements— interrogation—not in custody—Miranda warnings not required**

The trial court did not err in an attempted first-degree murder, possession of a handgun by a felon, and discharging a firearm into occupied property case by denying defendant's motion to suppress statements he made to the police when defendant had not been given Miranda warnings, because: (1) with respect to statements made to an officer during the ride to the station or while waiting in the interview room, defendant was not interrogated by that officer and therefore Miranda does not apply; and (2) although defendant was interrogated with respect to statements made to two other officers, he was not in custody during the interrogation and was not therefore entitled to Miranda warnings.

### 3. Evidence— refusal to submit to gunshot residue test

The trial court did not err in an attempted first-degree murder, possession of a handgun by a felon, and discharging a firearm into occupied property case by admitting evidence that defendant had refused to consent to a gunshot residue test, because: (1) to the extent that defendant's argument rests on use of videotape evidence, it is without merit since the portion relating to defendant's refusal to submit to the test was not played for the jury; (2) there was no fruit of the poisonous tree since the administration of a gun residue test without defendant's consent did not violate defendant's Fourth Amendment rights; (3) the admission of the evidence of the refusal could not have penalized defendant's due process rights since defendant did not have a right to refuse to take the test; and (4) evidence of a defendant's refusal to submit to a lawful testing or identification procedure has been held admissible when offered as circumstantial evidence of guilt.

### 4. Homicide— attempted first-degree murder—short-form indictment

The trial court did not err by failing to dismiss the charge of attempted first-degree murder on the ground that the short-form indictment did not allege each element of the offense, because use of the short-form indictment has been upheld for first or second-degree murder as well as for attempted first-degree murder.

Appeal by defendant from judgments entered 26 March 2001 by Judge Michael E. Beale in Cabarrus County Superior Court. Heard in the Court of Appeals 17 September 2002.

*Attorney General Roy Cooper, by Special Deputy Attorney General Daniel F. McLawhorn, for the State.*

*Osborn & Tyndall, P.L.L.C., by J. Kirk Osborn and Amos Granger Tyndall, for defendant-appellant.*

MARTIN, Judge.

Defendant appeals from judgments entered upon jury verdicts finding him guilty of attempted first degree murder, possession of a handgun by a felon, discharging a firearm into occupied property, and being an habitual felon.

The State's evidence at trial tended to show that prior to 3 March 2000, defendant and Mack Jones had developed a tense and

unfriendly relationship that had included violent encounters. On 3 March 2000, defendant was at the home of Danny Hilton when Jones drove up in front of the house. Defendant shot at him through the car window several times. Jones drove away and defendant got in his truck and followed him. Upon catching up with him, defendant rammed Jones' vehicle with his own, then fired more shots at him. Jones testified that he heard defendant say: "I'm going to kill you, ----- f-----." Jones returned fire with his own pistol and then managed to escape his vehicle, run to a nearby house, and call the police. Defendant returned to Hilton's house where he was soon located by the police.

The officers handcuffed defendant to frisk him for weapons, then removed the handcuffs. The officers told defendant that his truck had been involved in a shooting and he expressed surprise, indicating to the officers that he had last seen the truck when he parked it on the street in front of Hilton's house. The officers asked defendant if he would voluntarily accompany them to the police station so they could investigate what had happened with his truck. He agreed to go with the officers; he was not questioned or handcuffed during the ride to the station. While he was being transported to the station, and after he arrived there, defendant made certain statements to, and asked certain questions of, Officer Tierney, the officer with whom he had ridden, concerning the collision involving his truck, indicating to the officer that defendant knew more about the collision than had been related to him by the officers. Defendant subsequently made a statement to Detectives Rummage and Inman in which he initially denied knowing Jones, but later said that Jones had been threatening him and that Jones had set him up. He claimed that his truck had been stolen.

Defendant was asked to submit to a gunshot residue test, but he refused. He was subsequently placed under arrest. Upon his continued refusal to submit to the gunshot residue test, defendant was physically subdued by officers so that the test could be administered. The incident was recorded on videotape. The results of the gunshot residue test were not introduced into evidence at trial, however, the State was permitted, over defendant's objection, to introduce evidence of defendant's refusal to submit to the test.

---

The record on appeal contains twenty-five separate assignments of error. Defendant brings forward seven of the assignments of error in the four arguments contained in his brief. In those arguments,

defendant asserts the trial court erred by (1) denying his request for a separate arraignment and to reschedule his trial at least one week thereafter, (2) admitting evidence that he refused to consent to the gunshot residue test, (3) admitting statements made by defendant to the police when he had not been given *Miranda* warnings, and (4) failing to dismiss the charge of attempted first degree murder on the grounds that the "short-form indictment did not allege each element of the offense." The remaining assignments of error are deemed abandoned. N.C.R. App. 28(a), 28(b)(6). We find no error requiring that defendant receive a new trial.

I.

[1] Defendant contends he is entitled to a new trial by reason of the State's failure to schedule his arraignment at least a week before his trial, and the trial court's refusal to postpone the trial for at least a week after his arraignment. He relies primarily on G.S. § 15A-943, which provides in subsection (a) that in counties where there are twenty or more weeks per year of superior court scheduled for the hearing of criminal cases, arraignments must be scheduled "on at least the first day of every other week in which criminal cases are heard," and in subsection (b) that "[w]hen a defendant pleads not guilty at an arraignment required by subsection (a), he may not be tried without his consent in the week in which he is arraigned." Defendant argues that no arraignment was scheduled according to G.S. § 15A-943(a), and that he objected to proceeding to trial on the same day he was arraigned but was denied the week's interval between arraignment and trial to which he was entitled under G.S. § 15A-943(b).

In *State v. Shook*, 293 N.C. 315, 319-20, 237 S.E.2d 843, 847 (1977), the Supreme Court held that it was reversible error to proceed with a defendant's trial on the same day as arraignment without his consent in violation of G.S. § 15A-943(b). Indeed, if defendant here had been subjected to such a violation, he would be entitled to a new trial. However, the circumstances of this case indicate that he was not.

In response to defendant's insistence upon a formal arraignment at least a week prior to his trial, the trial court found that the record contained no request for arraignment by defendant, particularly not one filed within 21 days of notice of return of the bill of indictment. Thus, the trial court concluded that defendant had waived the requirement of G.S. 15A-943(b). G.S. § 15A-941 provides:

(a) Arraignment consists of bringing a defendant in open court . . . advising him of the charges pending against him, and directing him to plead. The prosecutor must read the charges or fairly summarize them to the defendant. If the defendant fails to plead, the court must record that fact, and the defendant must be tried as if he had pleaded not guilty.

. . .

(d) A defendant will be arraigned in accordance with this section only if the defendant files a written request with the clerk of superior court for an arraignment not later than 21 days after service of the bill of indictment . . . [or if applicable] not later than 21 days from the date of the return of the indictment as a true bill. Upon the return of the indictment as a true bill, the court must immediately cause notice of the 21-day time limit within which the defendant may request an arraignment to be mailed or otherwise given to the defendant and . . . counsel of record, if any. If the defendant does not file a written request for arraignment, then the court shall enter a not guilty plea on behalf of the defendant.

Defendant concedes that he filed no request for formal arraignment. However, he argues, without citing authority, that the arraignment scheduling requirements of G.S. § 15A-943 required the State to schedule an arraignment regardless of the provisions of G.S. § 15A-941(d). We hold that it would be illogical to require the State to schedule an arraignment pursuant to one statute where the right to such has been waived pursuant to another, and we decline to do so.

Alternatively, he argues for the first time on appeal that the trial court's ruling was flawed because defendant never received notice of the 21-day limit for filing a request for arraignment as required under G.S. § 15A-941(d). His failure to raise the issue at trial precludes his raising it on appeal. N.C.R. App. P. 10(b)(1). In any event, the argument is based on the content of documents which are not included in the record on appeal. *See* N.C.R. App. P. 9(a). It is the defendant's duty to see that the record on appeal is complete and "when the matter complained of does not appear of record, defendant has failed to show prejudicial error." *State v. Fox,* 305 N.C. 280, 283, 287 S.E.2d 887, 889 (1982), (quoting *State v. Cutshall,* 278 N.C. 334, 346, 180 S.E.2d 745, 752 (1971)). This assignment of error is overruled.

STATE v. TRULL

[153 N.C. App. 630 (2002)]

## II.

[2] Next, defendant argues that the trial court erred by admitting into evidence statements made by defendant while he was being transported to the police station and, once there, during an interview with Detectives Inman and Rummage. Defendant moved to suppress the evidence, alleging that he was in custody when he made the statements and that he had not been given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d. 694 (1966). Defendant asserts that the trial court's denial of the motion and admission of the evidence violated his rights under the Fifth Amendment of the United States Constitution and similar provisions in the North Carolina Constitution. U.S. Const. Amend. V.; N.C. Const. Art. I., § 23.

In reviewing the decision of a trial court to deny a motion to suppress, this Court may evaluate whether the findings of fact are supported by the evidence and whether those findings support the conclusions of law. *See State v. Steen*, 352 N.C. 227, 536 S.E.2d 1 (2000), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001). Although defendant assigned error to certain findings made by the trial judge in his orders denying the motion to suppress, he did not address the allegedly erroneous findings in his brief. Therefore, we deem the related assignments of error to be abandoned. N.C.R. App. P. 28(b)(6). Unchallenged by defendant, the trial court's findings of fact are binding on this Court on appeal. *See Steen*, 352 N.C. at 238, 536 S.E.2d at 8.

Defendant's brief and remaining assignments of error on this issue address only whether the trial judge erred in concluding that defendant was in custody (a) while he was being transported to the. station and waiting in the interview room with Officer Tierney and (b) while being interviewed by Detectives Rummage and Inman. This Court may review the trial court's legal conclusions *de novo. Id.*; *State v. Mahaley*, 332 N.C. 583, 423 S.E.2d 58 (1992). The determination of whether defendant was in custody when he made the statements is important because, generally, statements made by a defendant during custodial interrogation should be excluded from evidence if the defendant can show that he made them without benefit of *Miranda* warnings. *See Miranda, supra.*

With respect to statements made by defendant to Officer Tierney during the ride to the station or while waiting in the interview room, however, this Court need not reach the issue of custody. In its order, the trial court concluded that defendant was not interrogated by

Officer Tierney. Defendant did not assign error to this conclusion or challenge it in his brief. Therefore, it is not within the scope of review and is binding on appeal. N.C.R. App. P. 10(a), 10(b)(1), 28(b)(6). Because *Miranda* applies only to statements made as a result of custodial *interrogation*, the trial court's conclusion that there was no interrogation by Officer Tierney is fatal to defendant's argument on this point.

With respect to statements made by defendant to Detectives Rummage and Inman, the trial court concluded that although defendant was interrogated, he was not in custody during the interrogation and was not, therefore, entitled to *Miranda* warnings. In *State v. Buchanan*, 353 N.C. 332, 543 S.E.2d 823 (2001); *opinion after remand*, 355 N.C. 264, 559 S.E.2d 785, *reconsideration denied*, 355 N.C. 495, 563 S.E.2d 187 (2002), our Supreme Court clarified the test for determining whether a defendant is in custody for purposes of *Miranda*. Prior to *Buchanan*, several cases had focused, when considering whether a defendant was in custody at the time of interrogation, upon the question of whether a reasonable person would have felt "free to leave" under the circumstances. *See id.* at 339-40, 543 S.E.2d at 828. In *Buchanan*, however, the Court declared that:

> based on United States Supreme Court precedent and the precedent of this Court, the appropriate inquiry in determining whether a defendant is "in custody" for purposes of *Miranda* is, based on the totality of the circumstances, whether there was a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."

*Id.* The Court referred to this test as the "ultimate inquiry" test.

For purposes of comparison with the present case, it is important to note that in *Buchanan*, the trial court had granted the motion to suppress based on its conclusion that defendant was in custody at the time of his statement. *See id.* at 333, 543 S.E.2d at 824. The Supreme Court described the "free to leave" test as a broader test than the "ultimate inquiry" test and remanded the case for reconsideration. *See id.* at 339-40, 543 S.E.2d at 828. If under the narrower "ultimate inquiry" test the trial court concluded that the defendant was not "in custody," the motion would be denied and the State could introduce the statements at issue into evidence.

In the present case, however, the circumstances are reversed in that the defendant's motion to suppress was denied. The trial court

based its denial of the motion with regard to the statements made by defendant in the interview on the conclusion that "[d]efendant was never formally arrested and a reasonable person, under the totality of the circumstances then existing, would have believed that he was free to leave and not under arrest." At worst, this conclusion seems to be based on a combination of the "free to leave" and "ultimate inquiry" tests. However, even if it is solely based on the "free to leave" test, there is no need for us to remand. In an analogous case, this Court stated that:

> [s]ince the trial court determined that under the less restrictive "free to leave" test that defendant's statement should not be suppressed, it follows that an application of the more restrictive "formal arrest" test would yield the same conclusion, that, "defendant was not in custody" for purposes of *Miranda*.

*State v. Kornegay*, 149 N.C. App. 390, 395, 562 S.E.2d 541, 545, *disc. review denied*, 355 N.C. 497, 564 S.E.2d 51 (2002) (quoting *Buchanan, supra*).

Having settled that the trial court committed no prejudicial errors of law, we must also evaluate whether the findings of fact in the order support the conclusion that defendant was not in custody. The findings indicate that defendant was only briefly restrained with handcuffs for a weapons frisk and that he thereafter voluntarily went to the station with the police, submitted to an interview, and signed a written statement that specifically affirmed his understanding of the situation and his voluntary cooperation. He was informed several times that he was free to leave, including after he indicated interest in having an attorney present, but made no effort to do so. These and other facts found by the trial judge support the conclusions that defendant was not in custody, could not reasonably have believed he was in custody, and thus had no right to be informed of his *Miranda* rights. *See State v. Gaines*, 345 N.C. 647, 662-63, 483 S.E.2d 396, 405, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997) (upholding conclusion that defendant was not in custody where he was told several times that he was not under arrest and was free to leave, and defendant signed a statement including a clause to that effect). Furthermore, defendant's additional argument that his request for an attorney should have put an end to the questioning is without merit. If defendant was not in custody, then a request for an attorney would have no Fifth Amendment implications. *See Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378, *reh'g denied*, 452 U.S. 973, 69 L. Ed. 2d 984 (1981). The trial court properly concluded that none of defend-

ant's constitutional rights had been violated and denied the motion to suppress.

## III.

[3] Defendant also assigns error to the admission of evidence of his refusal to submit to the gunshot residue test. He argues that he had a constitutional right to refuse the test and that the use of evidence of that refusal at trial amounted to unlawful punishment for the exercise of his rights. Defendant further argues that even if the use of the evidence is not unlawful, the evidence was both irrelevant and prejudicial. The arguments in defendant's brief focus primarily on the admission and alleged playing before the jury of the portion of the videotape showing his refusal to submit to the test and his subsequent struggle with the officers. A careful review of the transcript, especially the pages cited by defendant, reveal, however, that although the entire videotape was admitted as an exhibit, the portion related to defendant's refusal to submit to the test was not played for the jury. Therefore, to the extent that defendant's argument rests on use of the videotape evidence, it is without merit.

Defendant challenges the admission of the evidence of his refusal to submit to the residue test based on his alleged right to refuse to consent to the test, the officers' alleged lack of authority to proceed without consent or court order, and the asserted irrelevance of the evidence and resulting prejudice. In his brief, defendant addresses not only these points, but also argues that his right to the assistance of counsel was violated. Because it was not argued at trial or included in his assignment of error, this Court declines to address this aspect of defendant's argument on appeal. N.C.R. App. P. 10(a).

Both at trial and on appeal, defendant makes what is essentially a "fruit of the poisonous tree" argument. *See, e.g., State v. Graves,* 135 N.C. App. 216, 221, 519 S.E.2d 770, 773 (1999). Defendant asserts that the administration of the gunshot residue test was an unconstitutional search of his person under the Fourth Amendment. U.S. Const. Amend. IV. Thus, he contends the statements by defendant and the video of his physical resistance that resulted from the search should have been excluded. However, in making this Fourth Amendment argument, defendant has failed to address the basis for the trial court's ruling to admit the evidence.

The Fourth Amendment of the United States Constitution protects the public from "*unreasonable* searches and seizures" (emphasis added). Generally, a warrant is required for any search or seizure,

and such warrant must be based upon "probable cause." *See State v. Coplen,* 138 N.C. App. 48, 54, 530 S.E.2d 313, 318 (2000). "However, an exception arises when law enforcement officers have probable cause to search and 'the circumstances of a particular case render impracticable a delay to obtain a warrant.'" *Id.* (citations omitted). "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *State v. Zuniga,* 312 N.C. 251, 261, 322 S.E.2d 140, 146 (1984) (quoting *Brinegar v. United States,* 338 U.S. 160, 175-76, 93 L. Ed. 1879, 1890 (1949)). In support of its ruling, the trial court concluded that the officers had probable cause to conduct the test and that exigent circumstances required that it be done immediately without a court order. In *State v. Coplen, supra,* this Court held that those two circumstances made the administration of a gunshot residue test without a court order lawful.

Although the trial court made no findings of fact preceding its conclusions, the evidence from which it would have drawn the requisite findings was not controverted and supported the conclusions. *See State v. Richardson,* 295 N.C. 309, 245 S.E.2d 754 (1978). Moreover, defendant did not take exception to the lack of findings at trial or on appeal. N.C.R. App. P. 10(b)(1). On the issue of probable cause, the trial court ascertained during the hearing that the search occurred after the police had gathered information regarding the defendant and the shooting in interviews with Mr. Jones and Mr. Hilton. Further, the *voir dire* witness, Officer Ledwell, responded to inquiry by the trial court that a gunshot residue test must be performed within three to four hours of the shooting. This evidence provided an adequate basis to support the conclusion that the search was reasonable under the circumstances. *See State v. Richardson, supra.*

Because the search was reasonable and not a violation of defendant's Fourth Amendment rights, statements or actions made by defendant as a result of the request for and administration of the test cannot be "fruit of the poisonous tree." *See Graves, supra.* Furthermore, the admission of evidence of the refusal could not have penalized defendant for exercise of his constitutional rights in violation of due process because defendant did not have the right to refuse to take the test. U.S. Const. Amend. XIV.

Defendant further argues that even if the search was lawful, the evidence of his refusal to submit to the test should have been

excluded because it was both irrelevant and prejudicial. N.C. Gen. Stat. § 8C-1, Rules 401-403 (2002). In the two specific portions of the transcript to which defendant directs our attention, defendant did not object to the officers' testimony on the basis of relevance. Although he argued at trial that the evidence was prejudicial, his theory was grounded in the constitutional arguments analyzed above, not in the claims made in his brief that the evidence of his refusal cast defendant as a danger to society, someone who had to be wrestled to the ground by police, thus resulting in unfair prejudice. Because defendant's brief has not directed this Court to any objections or rulings on the issues of relevance or prejudice within the transcript, we decline to address them. N.C.R. App. P. 10(b)(1). Nevertheless, we note that evidence of a defendant's refusal to submit to a lawful testing or identification procedure has been held admissible when offered as circumstantial evidence of guilt. *See, e.g., United States v. Parhms*, 424 F.2d 152, 154-55 (9th Cir. 1970) (refusal to participate in line-up); *United States v. Nix*, 465 F.2d 90, 92-94, *cert. denied*, 409 U.S. 1013, 34 L. Ed. 2d 307 (5th Cir. 1972) (refusal to produce handwriting sample); *State v. Odom*, 303 N.C. 163, 277 S.E.2d 352, *cert. denied*, 454 U.S.1052, 70 L. Ed. 2d 587 (1981) (refusal to submit to gunshot residue test). We find no error in the trial court's admission of evidence that defendant refused to submit to the gunshot residue test.

IV.

[4] In his final argument, defendant challenges the use of the short form indictment for the charge of attempted first degree murder, contending the indictment was insufficient because it did not allege each of the specific elements of the offense. In his brief, defendant concedes that the use of short form indictments for first or second degree murder was upheld in *State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000). Furthermore, this Court applied *Wallace* and other similar cases to uphold the use of the short form indictment for attempted first degree murder in *State v. Choppy*, 141 N.C. App. 32, 539 S.E.2d 44 (2000), *disc. review denied*, 353 N.C. 384, 547 S.E.2d 817 (2001). This assignment of error is overruled.

Defendant received a fair trial, free from prejudicial error.

No error.

Chief Judge EAGLES and Judge THOMAS concur.