IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-22

Filed 20 May 2026

Person County, Nos. 18CR000573-720, 18CR000574-720, 19CR000290-720

STATE OF NORTH CAROLINA

v.

GREG MARK GENTRY, Defendant.

Appeal by defendant from judgment entered 8 June 2023 by Judge John M. Dunlow in Person County Superior Court. Heard in the Court of Appeals 15 October 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Benjamin Szany, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R. Grant, for defendant-appellant.*

GORE, Judge.

Defendant appeals from judgments entered in Superior Court, Person County, upon jury verdicts convicting him of statutory sex offenses, indecent liberties, and attaining habitual-felon status. The trial court imposed consecutive aggravated-range sentences of life imprisonment without parole. Defendant asserts several claims of ineffective assistance of counsel ("IAC") and seeks further disclosure of confidential records reviewed in-camera under *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987). Jurisdiction lies in this Court pursuant to N.C.G.S. §§ 7A-27(b) and 15A-

1444(a). For the reasons that follow, we affirm in part, remand in part for a limited evidentiary hearing, and otherwise deny relief.

**I.**

On 14 December 2018, the Person County grand jury returned true bills of indictment charging defendant with two counts of statutory sex offense with a child fifteen years old or younger and two counts of indecent liberties with a child. On 30 September 2019, the grand jury returned an additional indictment charging defendant with attaining the status of a habitual felon.

Before trial, defendant moved for an in-camera review of the complainant's medical and social-services records pursuant to *Ritchie*. The trial court reviewed records from eight providers, determined that thirty-eight pages were both favorable and material to the defense, and ordered disclosure of those pages—including a ten-page Child and Family Evaluation ("CFE") report and twenty-eight pages from the Department of Social Services ("DSS"). The court sealed the remainder of the records for appellate review.

The jury convicted defendant as charged on the substantive offenses. Following a sentencing-phase proceeding, the jury also found defendant had attained habitual felon status and found the existence of an aggravating factor, namely that defendant took advantage of a position of trust or confidence to commit the offenses. The trial court entered judgment, sentencing defendant as a habitual felon to consecutive, aggravated-range terms of life imprisonment without the possibility of

parole. Defendant gave notice of appeal in open court.

On appeal, defendant principally argues he was denied effective assistance of counsel at trial and that he is entitled to this Court's review of the sealed materials to determine whether additional information favorable and material to his defense should have been disclosed.

## II.

### A.

Claims of IAC are evaluated under *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must show both deficient performance—representation falling below an objective standard of reasonableness—and prejudice—a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 687–94; *see also Harrington v. Richter*, 562 U.S. 86, 104–12 (2011) (the probability must be substantial enough to undermine confidence in the outcome). Courts apply a strong presumption that counsel's conduct was reasonable trial strategy. *Strickland*, 466 U.S. at 689.

### B.

In North Carolina, IAC claims are ordinarily addressed by motion for appropriate relief ("MAR") if the record is insufficient to resolve either prong. *State v. Fair*, 354 N.C. 131, 166–68 (2001). When an IAC claim depends on facts not fully developed in the record, the usual course is dismissal without prejudice to MAR or a limited remand to develop the necessary facts. *Id.*; *see also State v. Stroud*, 147 N.C.

App. 549, 553–54 (2001).

**C.**

North Carolina recognizes cumulative-prejudice analysis for IAC where multiple deficient acts, considered together, create a reasonable probability of a different result. *State v. Allen*, 378 N.C. 286, 305–07 (2021), *abrogated on other grounds by State v. Walker*, 385 N.C. 763 (2024). Cumulative prejudice requires at least two established deficiencies; absent individual deficiencies, there can be no cumulative prejudice. *Id.*; *see also State v. Gillard*, 386 N.C. 797, 852 (2024).

**D.**

Even where an evidentiary misstep is shown, relief depends on prejudice. For constitutional errors, the *Strickland* prejudice test governs IAC claims; for nonconstitutional evidentiary issues, the State's case and the totality of the evidence inform whether any assumed error undermines confidence in the verdict. *Strickland*, 466 U.S. at 694; *see also State v. Lawrence*, 365 N.C. 506, 512 (2012) ("Preserved legal error is reviewed under the harmless error standard of review.").

**III.**

Defendant argues trial counsel was ineffective for failing to present to the jury the contents of a DSS-requested CFE report that the trial court reviewed in camera and disclosed as "favorable and material" to the defense. He contends credibility was central and the jury never heard the report's admissible conclusions.

The record establishes that counsel had the report, but it does not reveal (i)

whether the CFE (in whole or in part) was admissible under any hearsay exception or through an expert/custodian; (ii) whether a proper sponsoring witness was reasonably available; or (iii) whether counsel made a deliberate strategic decision not to seek admission versus an oversight. Those are quintessential extra-record matters.

When an IAC claim turns on facts outside the appellate record—such as counsel's trial preparation, evidentiary foundations, or witness availability—North Carolina courts ordinarily do not resolve the claim on the merits on direct appeal. Rather, they remand for a focused evidentiary hearing or dismiss without prejudice to file a MAR. *See Fair*, 354 N.C. at 166–68 (explaining that undeveloped IAC claims are generally left for MAR or evidentiary development); *Stroud*, 147 N.C. App. at 556; *see also Massaro v. United States*, 538 U.S. 500, 504–05 (2003) (recognizing that IAC claims "ordinarily" should be raised in collateral proceedings because the trial record is often inadequate to resolve them).

Accordingly, the proper course is a limited remand for findings on: (1) whether the CFE (or discrete portions) was admissible and through whom; (2) whether a qualifying sponsor was reasonably available at trial; (3) counsel's actual preparation and reasons concerning admission; and (4) *Strickland* prejudice in light of whatever portion of the CFE would have been admissible.

## IV.

Defendant raises multiple additional theories of ineffective assistance on direct

appeal. To prevail, he must establish both deficient performance and prejudice; if either prong fails, the claim fails. *Strickland*, 466 U.S. at 687–96; *State v. Oglesby*, 382 N.C. 235, 245 (2022). Each of these claims can be resolved on the face of the record and, for the reasons that follow, none warrants relief.

**A.**

On cross, the defense highlighted that the complainant made earlier denials before later reporting the conduct. On redirect, the prosecutor asked her to distinguish those earlier denials from her trial testimony and, in doing so, twice asked—without objection—whether what she had said in court was "the truth." Defendant characterizes this as impermissible self-vouching. *See State v. Solomon*, 340 N.C. 212, 221 (1995); *State v. Skipper*, 337 N.C. 1, 39 (1994); *State v. Reid*, 175 N.C. App. 613, 624 (2006).

On this record, even assuming *arguendo* counsel's failure to object was deficient performance, defendant cannot demonstrate prejudice. The jury received the usual instruction that it alone judges credibility, which courts presume jurors follow, *see State v. Jennings*, 333 N.C. 579, 618 (1993), and the challenged questions were tethered to distinguishing earlier false statements from in-court testimony rather than inviting the witness to opine on ultimate credibility, *see State v. Hicks*, 239 N.C. App. 396, 404 (2015).

**B.**

As part of the State's case, the jury viewed a portion of the clinic interview

recording. In describing the sequence of events surrounding her eventual report, the complainant recounted a brief exchange with defendant's then-spouse, including the statement, "I really believe . . . something happened to you." That snippet appeared within a short segment the jury heard twice during the playing and re-playing of the interview. Defendant argues this was inadmissible hearsay and amounted to impermissible vouching by a non-testifying declarant.

The State responds that, had an objection been raised, the statement was admissible for a non-hearsay purpose—its effect on the listener and to explain subsequent actions—namely, why and how the complainant proceeded to disclose and follow up thereafter. *See, e.g.*, *In re A.J.L.H.*, 384 N.C. 45, 52–53 (2023); *State v. Nicholson*, 355 N.C. 1, 36 (2002); *State v. Call*, 349 N.C. 382, 409 (1998). The cited portion of the recording was offered in that narrative context, directly tied to the ensuing steps the complainant took.

Even assuming *arguendo* that counsel should have objected, defendant cannot show prejudice. In context, the brief remark did not supplant the jury's role as sole arbiter of credibility, and the court instructed the jury accordingly. The isolated statement—embedded within a larger chronology explaining subsequent actions—does not establish a reasonable probability of a different verdict.

**C.**

During trial, the defense sought to introduce a recorded three-way call among defendant, Nicole, and the complainant. The court excluded Nicole's out-of-court

statements absent her live testimony.  Defense counsel indicated he would subpoena her.  A subpoena was in fact issued for 6 June 2023 but went unserved.  Nicole never appeared, and the recording was not admitted.

Defendant contends counsel acted dilatorily in pursuing Nicole and that the jury's inability to hear the call was prejudicial.  The record, however, reflects that counsel did subpoena her once it was clear the State would not call her, and nothing indicates that non-service was due to counsel's neglect or that Nicole was available to be brought to court during the remaining trial days.  On this record, defendant fails to show deficient performance.

Nor can defendant establish prejudice.  The call itself contains ambiguous exchanges and, even assuming it had been admitted, the jury already heard testimony about the maternal family's prior reports and their perceived motives.  Portions of the call also supported the State's case, as the complainant pushed back when defendant suggested others had prompted her.  In light of the overall trial evidence, there is no reasonable probability that admission of the call would have altered the verdict.  *See Oglesby*, 382 N.C. at 245.

**D.**

Defendant next argues counsel was ineffective for failing to call his eldest daughter, Kaylee, as a defense witness.  He points to a pretrial statement in which she suggested defendant had not committed the charged conduct.

The State emphasizes that calling Kaylee presented substantial strategic

risks. Kaylee had previously accused defendant of abuse herself, which would have been admissible to impeach her credibility and to rebut any exculpatory testimony she might have given. The record also contains information that Kaylee reported defendant had offered her benefits if she testified in his favor, exposing her to cross-examination about bias and potential motive to fabricate. In addition, her knowledge of the charged events was tenuous, raising Rule 602 concerns about whether she had personal knowledge sufficient to provide competent testimony.

In light of these hazards, counsel's decision not to call Kaylee was well within the realm of reasonable trial strategy. *See Strickland*, 466 U.S. at 688 (strong presumption that counsel's decisions are strategic). Choices about whether to call a particular witness are strategic determinations, particularly where the witness poses obvious credibility problems or risks opening the door to damaging rebuttal. *See State v. Quick*, 152 N.C. App. 220, 222 (2002).

Nor can defendant demonstrate prejudice. Even if Kaylee had testified consistent with her prior statement, her credibility would have been severely undermined by her prior accusations and impeachment evidence, and the jury already heard competing testimony about family members' motives. On this record, defendant cannot show a reasonable probability that her testimony would have changed the verdict. *See Strickland*, 466 U.S. at 694.

**E.**

Defendant argues counsel was ineffective for failing to pursue or introduce a

- 9 -

letter allegedly written by his deceased nephew, which he contends would have undermined the complainant's credibility. The record reflects that defense counsel attempted to elicit testimony about the letter through another family member, but the trial court sustained objections based on hearsay and lack of authentication. No competent sponsoring witness was available to establish authorship or foundation, and no hearsay exception was identified that would have permitted the letter's contents to reach the jury.

On this record, defendant cannot establish deficiency. Counsel is not ineffective for declining to pursue evidence that could not be admitted under existing evidentiary rules. *See State v. Phillips*, 365 N.C. 103, 130–31 (2011) (rejecting IAC claim where the argument sought was contrary to settled evidentiary law). Nor can defendant show prejudice. Even assuming some path to admission, the asserted impeachment value is speculative given the absence of reliable linkage to the declarant and the lack of competent foundation. Because the record does not establish any viable route to admissibility, defendant fails to show either deficient performance or a reasonable probability of a different result.

**F.**

Defendant finally argues that, even if the individual instances of alleged deficient performance were not prejudicial standing alone, their cumulative effect deprived him of a fair trial. North Carolina recognizes cumulative-error analysis in the IAC context, but it requires a showing of multiple significant deficiencies that,

when considered together, undermine confidence in the outcome. *See Allen*, 378 N.C. at 304.

Here, defendant has not demonstrated more than one potential deficiency, and the record does not support a conclusion that trial counsel committed multiple significant errors. Without such a showing, there is no basis to aggregate prejudice. Accordingly, defendant's cumulative-prejudice claim is without merit.

## V.

When a defendant seeks confidential records that may contain information favorable to the defense, the trial court must conduct an in-camera review and disclose any portion that is both favorable and material. *Ritchie*, 480 U.S. at 57–60. "If the sealed records contain evidence which is both 'favorable' and 'material,' defendant is constitutionally entitled to disclosure of this evidence." *McGill*, 141 N.C. App. at 102 (citation omitted). On appeal, this Court reviews de novo whether withheld records satisfy that standard. *State v. Tadeja*, 191 N.C. App. 439, 449 (2008) (citation omitted).

Here, the trial court reviewed records from eight providers, identified thirty-eight pages as favorable and material, and ordered disclosure of those pages to the defense—including a ten-page CFE and twenty-eight DSS pages—while sealing the remainder for appellate review.

Upon our independent examination of the sealed records, we conclude—consistent with the trial court—that they contain no information both favorable to

the defense and material to guilt or punishment. There is no reasonable probability their disclosure would have altered the result. The denial of disclosure was not error. *See Tadeja*, 191 N.C. App. at 450.

## VI.

We reject defendant's remaining IAC claims on the face of the record. As to the CFE issue, the record is insufficient to resolve deficiency and prejudice; we remand for a limited evidentiary hearing confined to admissibility, availability of a sponsoring witness, counsel's reasoning, and *Strickland* prejudice. Finally, after our independent review, the sealed materials contain no additional information both favorable and material to the defense; the trial court did not err in withholding them.

Accordingly, we affirm in part, remand in part for further proceedings not inconsistent with this opinion, and otherwise deny relief.

AFFIRMED IN PART; REMANDED IN PART.

Judge COLLINS concurs.

Judge STADING concurring in part, dissenting in part, by separate opinion.

STADING, Judge, concurring in part and dissenting in part.

I respectfully dissent solely with respect to the majority opinion's disposition of remand as to the undeveloped IAC claim. The majority opinion states, "the proper course is a limited remand for findings" as to Defendant's IAC claim concerning the CFE report. Yet our jurisprudence establishes that when the cold record is insufficient to resolve an IAC claim on direct appeal, generally, the proper disposition is to dismiss the appeal without prejudice to the Defendant's right to file a motion for appropriate relief. *See, e.g., State v. Fair*, 354 N.C. 131, 167, 557 S.E.2d 500, 525 (2001) ("Accordingly, should the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent MAR proceeding."); *see also State v. Kinch*, 314 N.C. 99, 106, 331 S.E.2d 665, 669 (1985) ("We cannot properly determine this issue on this direct appeal because an evidentiary hearing on this question has not been held. Our decision on this appeal is without prejudice to defendant's right to file a motion for appropriate relief in the superior court based upon an allegation of ineffective assistance of counsel."); *see also State v. Oglesby*, 382 N.C. 235, 243, 876 S.E.2d 249, 257 (2022) ("[W]hen further investigation is required to resolve a defendant's IAC claim—for example, when further factual development is needed because the cold record does not disclose information relevant to assessing the reasonableness of counsel's performance—the proper course is generally to dismiss the claim without prejudice to allow for a hearing and further factfinding.");

*see also State v. Friend*, 257 N.C. App. 516, 521, 809 S.E.2d 902, 906 (2018) ("[W]hen this Court reviews ineffective assistance of counsel claims on direct appeal and determines that they have been brought prematurely, we dismiss those claims without prejudice, allowing defendant to bring them pursuant to a subsequent motion for appropriate relief in the trial court. Accordingly, we dismiss Friend's ineffective assistance of counsel claim without prejudice to pursue it through a motion for appropriate relief in the trial court.").

That said, our Courts have remanded IAC claims raised on direct appeal for an evidentiary hearing where the defendant established a *Harbison* error, but the question of consent remained unclear from the cold record. *See State v. McAllister*, 375 N.C. 455, 477, 847 S.E.2d 711, 724–25 (2020) ("[W]e believe that the appropriate remedy is to remand this case to the Superior Court, Forsyth County, for an evidentiary hearing to be held as soon as practicable for the sole purpose of determining whether defendant knowingly consented in advance to his attorney's admission of guilt to the assault on a female charge."); *see also State v. Farook*, 297 N.C. App. 412, 456, 910 S.E.2d 867, 897 (2024), *temp. stay allowed*, ___ N.C. ___, 910 S.E.2d 357 (2025), (citations and quotation marks omitted) ("[I]nstead of granting Defendant a new trial, we believe that the appropriate remedy is to remand this case to the [trial court] for an evidentiary hearing to be held as soon as practicable for the sole purpose of determining whether [D]efendant knowingly consented in advance to his attorney's admission of guilt to the misdemeanor death by motor vehicle charge.").

*Stading, J., concurring in part and dissenting in part.*

Outside of the context of direct appeals, our Courts have remanded IAC claims when an MAR Court incorrectly granted or denied a defendant's MAR, or an MAR Court failed to hold an evidentiary hearing on a defendant's MAR. *See, e.g., State v. Ballard*, 283 N.C. App. 236, 240, 872 S.E.2d 557, 562 (2022) (remanding "for an evidentiary hearing on the IAC claims"); *see also State v. Marzouq*, 268 N.C. App. 616, 617, 836 S.E.2d 893, 895 (2019) (remanding for additional findings "where the record does not affirmatively show whether the trial court considered defendant's prior convictions to determine prejudice"); *see also State v. Howard*, 247 N.C. App. 193, 211, 783 S.E.2d 786, 798 (2016) (vacating the trial court's order granting the defendant's MAR and remanding for an evidentiary hearing); *see also State v. Jeminez*, 275 N.C. App. 278, 295, 853 S.E.2d 265, 277 (2020) (vacating "the trial court's order denying Defendant's MAR" and remanding "for entry of a new MAR order, and an evidentiary hearing if necessary").

In the instant case, Defendant's IAC claim pertaining to the CFE report— which he raised on direct appeal—does not allege or establish a *Harbison* error. *Cf. McAllister*, 375 N.C. at 477, 847 S.E.2d at 724–25; *Farook*, 297 N.C. App. at 456, 910 S.E.2d at 897. Considering the foregoing, I would dismiss this IAC claim without prejudice as opposed to remanding for an evidentiary hearing. *See, e.g., Fair*, 354 N.C. at 167, 557 S.E.2d at 525; *Kinch*, 314 N.C. at 106, 331 S.E.2d at 669; *Oglesby*, 382 N.C. at 243, 876 S.E.2d at 257; *Friend*, 257 N.C. App. at 521, 809 S.E.2d at 906. Otherwise, I concur in the majority's opinion.